IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MONALISA COVINGTON,            )
                               )
          Plaintiff,           )
                               )
     v.                        )     1:15CV343
                               )
RANDOLPH HOSPITAL, INC.,       )
                               )
          Defendant.           )

## MEMORANDUM ORDER

THOMAS D. SCHROEDER, District Judge.

Before the court is Randolph Hospital, Inc.'s Motion to Dismiss or, Alternatively, for a More Definite Statement. (Doc. 9.) For the reasons set forth below, the motion will be granted and the case dismissed.

**I.   BACKGROUND**

The "Statement of Claim" section of the handwritten complaint in this case reads, in its entirety:

> Barry would daily request my letter of resignation as my supersor [sic]. I strongly do not believe I was treated fairly like my causiens [sic] peers as an [sic] Chaplain for Randolph Hospol [sic] by my supervisor Chaplain Barry Morris. He was condensing [sic] to me in stating "Are you intimdate [sic] by me, are you intimidate [sic] by "white people.'" He would informed [sic] me to email me [sic] letter of resignation through emailed to him. He was [sic] strongly made me feel it was "colorism" played a major role in my positin [sic] at Randolph Hospital, because of the rate between African Americans and Caucasians. Colorism is discrmetion [sic] based on the skin color is a form of prejudice [sic] or discrimination [sic] and I was treated differently. I would cry not in his presence but when I left his office. I felt I was treated unfairly in the work place at

Randolph Hospital. No one should be judged by the complexion of ones [sic] skin color. My dgres play [sic] a factor as well.

(Doc. 2 at 2.) The complaint's "Relief" section is completely blank. (Id. at 4.)

In addition to the information on the face of the document, various materials are attached to the complaint, including a right-to-sue notice from the United States Equal Employment Opportunity Commission, a consent form for assistance from a local chapter of the NAACP, and emails between Covington and various supervisors at the Hospital. (Doc. 2-1.) Because Covington filed this action *pro se*, the court will construe the complaint liberally and consider the contents of these attachments as if they were incorporated into the complaint itself. See Valentine v. Potter, No 1:09CV880, 2013 WL 1320474, at *2 (M.D.N.C. Mar. 29, 2013) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)). Accordingly, for the purposes of this Memorandum Order, the court will proceed as if the complaint contained the following factual allegations.

Covington worked as a chaplain at Randolph Hospital. (See Doc. 2 at 2.) Barry Morris served as Covington's supervisor. (Id.) The hospital had approximately six white chaplains, but Covington was the only African American chaplain during the period of her employment. (See Doc. 2-1 at 2.) Covington thought that Morris was a "megalomaniac" and argued with him over whether Morris

2

was her "boss."[1]  (Id. at 8.)  Covington also disagreed with Morris' decision to allow another employee to participate in her performance review process.  (See id. at 9.)

In addition to these disagreements, Covington perceived Morris' actions to be racially discriminatory.  She believed that Morris' behavior during rounds changed depending on the race of the patient.  (Id. at 12.)  She also felt that Morris discriminated against her personally on the basis of race.  (Doc. 2 at 2.)  For example, Morris asked Covington if she was intimidated by white people.  (Id.)  Morris also accused Covington of using a "wrong" methodology with her patients, a comment she attributed to her race.  (See Doc. 2-1 at 2.)  Covington asserts that Morris also made several other "racial bias comments," though she does not identify any of these comments.  (Id.)

On December 9, 2013, Morris made a comment to Covington about his budget and stated that Covington needed to take a "refresher" course.  (Id. at 9.)  Believing that Morris was looking for an excuse to fire her, Covington suggested that she resign.  (Id.)  Covington officially resigned approximately two days later.  (See id. at 14.)

Covington filed this lawsuit on April 26, 2015.  (Doc. 2.)  On May 20, 2015, Randolph Hospital filed a motion to dismiss or,

---

[1] Covington insisted that God is her "boss," while Morris was merely her "supervisor."  (Id. at 8.)

3

alternatively, for a more definite statement. (Doc. 9.) Covington missed the deadline for filing a response to the hospital's motion. Ten days after the time to respond expired, Covington filed a motion for an indefinite extension of time to respond. (Doc. 13.) Finding no excusable neglect, the United States Magistrate Judge denied Covington's motion.

## II. ANALYSIS

When a party fails to respond to a motion within the allotted time, "the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." M.D.N.C. LR 7.3(k). This court has strictly enforced Local Rule 7.3. The court need not rely solely on Covington's failure to respond in this case, however, because the complaint fails to meet the pleading requirements of Federal Rule of Civil Procedure 8(a). In light of Covington's status as a *pro se* litigant, the court will briefly address a few of the complaint's shortcomings.

A valid complaint must contain three elements: (1) "a short and plain statement of the grounds for the court's jurisdiction;" (2) "a short and plain statement of the claim showing that the pleader is entitled to relief;" and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a). Here, Covington left the "Relief" section of her complaint blank. (Doc. 2 at 4.) Thus, even if the complaint clearly stated a claim upon which relief could be granted, its failure to request relief weighs in favor of

4

dismissal. See, e.g., Collins v. Great Plains Oilfield Rental, L.L.C., No. CIV-12-1108-M, 2013 WL 5797737, at *2 (W.D. Okla. Oct. 28, 2013) (dismissing claims against one of three defendants when the complaint stated a claim but failed to request any relief from that defendant); Sixth Angel Shepherd Rescue, Inc. v. Penn. SPCA, No. CIV.A.10-3101, 2011 WL 605697, at *4 (E.D. Pa. Feb. 15, 2011) ("Failure to specify relief sought beyond a 'general prayer' for judgment weighs in favor of dismissal for noncompliance with Rule 8.")[2]

More fundamentally, the complaint also fails to state a claim upon which relief can be granted. In order to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although a reviewing court must accept the complaint's factual allegations as true on a motion to dismiss, legal conclusions are not entitled to the presumption of truth. Iqbal, 556 U.S. at 678.

---

[2] The complaint also fails to cite any basis for the court's jurisdiction, apart from a general reference to the United States Constitution. (Doc. 2 at 1.) Although the court construes the pleadings of *pro se* litigants liberally, it "cannot shoulder the full burden of fashioning a viable complaint for a *pro se* plaintiff." Simon v. Shawnee Corr. Ctr., No. 13-521-GPM, 2013 WL 3463595, at *1 (S.D. Ill. July 9, 2013). Nevertheless, given the complaint's references to discrimination and "colorism," it appears that Covington attempts to state a claim for race discrimination under Title VII. (See Doc. 2 at 2.) Randolph Hospital acknowledges as much in its brief on the motion to dismiss. (Doc. 10 at 5.) Such a claim would invoke federal question jurisdiction under 28 U.S.C. § 1331.

5

In Title VII cases, a plaintiff does not need to plead a prima facie case of race discrimination in order to survive a motion to dismiss. McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 585 (4th Cir. 2015). But a plaintiff cannot simply plead facts that are "*consistent* with discrimination." Id. at 586 (alteration in original) (citing Iqbal, 556 U.S. at 678). Instead, the plaintiff must "allege facts to satisfy the elements of a cause of action created by that statute." Id. at 585. Thus, if an employee claims to have suffered an adverse employment action, she must plead facts to raise a plausible inference that she suffered the adverse action "*because of* [her] race." Id. (emphasis and alteration in original). Similarly, if the employee claims that her employer created a hostile work environment, she must plead facts to establish that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." See Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015). Under either framework, "naked" allegations about the discriminatory character of an employer's behavior are treated as conclusions, and thus do not qualify for the presumption of truth. See McCleary-Evans, 780 F.3d at 585-86.

Here, the complaint and attached materials do not contain sufficient factual allegations to raise a plausible inference that

6

Covington suffered an adverse employment action at all, much less that she suffered an adverse action because of her race. Covington does not allege that she was fired, demoted, transferred, or suffered any other action which could adversely affect the terms, conditions, or benefits of her employment, as required to establish an adverse employment action. See James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375-76 (4th Cir. 2004). To the contrary, she admits that she unilaterally decided to resign because she thought that Morris was looking for an excuse to fire her in the future. (See Doc. 2-1 at 9.)

In addition, to the extent that the complaint could be construed as claiming that Covington was constructively discharged, this theory similarly fails. An employee's resignation may qualify as a constructive discharge, and thus an adverse employment action, when an employer "deliberately makes an employee's working conditions intolerable, and thereby forces [her] to quit [her] job." Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985). "However, mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." James, 368 F.3d at 378 (citations and internal quotation marks omitted). Here, although it is clear that Covington felt unfairly criticized, the complaint contains no allegations that could support a plausible

7

inference that the conditions of Covington's employment were so intolerable as to induce a reasonable person to resign. In fact, Covington admits that she did not resign in response to intolerable working conditions, but rather to avoid being fired. (See Doc. 2-1 at 9.)

Finally, the complaint fails to state a hostile work environment claim. In order to establish such a claim, a plaintiff must plead facts to establish (1) unwelcome conduct; (2) based on the plaintiff's race; (3) that is sufficiently severe to alter the plaintiff's conditions of employment; and (4) the conduct may be imputed to the employer. Boyer-Liberto, 786 F.3d at 277. In order to satisfy the third element, a complaint must allege facts that raise a plausible inference that "the environment would reasonably be perceived, and is perceived, as hostile or abusive." Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993)). "Whether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.'" Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)). "Simple teasing [and] offhand comments" are not enough to establish a hostile work environment. Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998) (alterations in original)). And although isolated conduct may occasionally rise to the level of a hostile work environment when the conduct is "extremely serious," most

8

"viable" claims "involve repeated conduct."  Id.

Here, the complaint fails to allege facts that would lead a reasonable person in Covington's position to perceive Randolph Hospital as hostile or abusive.  Aside from conclusory allegations of "racial bias comments" and "colorism," the complaint's only allegation regarding racial harassment is that Morris once asked Covington if she was intimidated by white people.  (Doc. 2 at 2.) While potentially insensitive, this isolated, offhand comment is not severe enough to lead a reasonable person to perceive Randolph Hospital as hostile or abusive.  See Harris, 510 U.S. at 21 (stating that the "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" does not, by itself, create an objectively hostile working environment (internal citations omitted)); Bowden v. Clough, 658 F. Supp. 2d 61, 81 (D.D.C. 2009) (supervisor's use of the term "you people" to refer to an employee did not create a hostile work environment); Howerton v. Bd. of Educ. of Prince George's Cnty., No. TDC-14-0242, 2015 WL 4994536, at *15 (D. Md. Aug. 19, 2015) (supervisor's comment that plaintiff could not be trusted to make personnel decisions because he "only hired white people" did not create a hostile work environment).

In sum, the complaint fails to state a claim for race discrimination under Title VII.  Moreover, even if the complaint did state a claim, Covington's failure to request any relief from

the court and her failure to reply to Randolph Hospital's motion in a timely manner both weigh in favor of dismissing this action.

## III. CONCLUSION

For the reasons stated, the court finds that the complaint fails to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a).

IT IS THEREFORE ORDERED that Randolph Hospital, Inc.'s motion to dismiss (Doc. 9) is GRANTED and this action is DISMISSED. A judgment dismissing this action will be entered contemporaneously with this Memorandum Order.

                                                  /s/    Thomas D. Schroeder
                                                United States District Judge

December 1, 2015